IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IGNATIUS GOETZ, <br><br> Plaintiff, <br><br> v. <br><br> DALE HILLER, <br><br> Defendant | Case No. 1:20-cv-05167 <br><br> Hon. Mary M. Rowland |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT**

Defendant Dale Hiller respectfully submits this memorandum of law in support of his Rule 12(b)(6) motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.

**INTRODUCTION**

This case arises in the context of the widespread outrage, debate, and protests regarding police brutality and misconduct that swept the nation after police killed George Floyd in Minneapolis, Minnesota. While protests spread across the country, hundreds of reports of police violence towards protesters and violations of First Amendment rights began to surface, becoming an independently troubling and newsworthy phenomenon.[1]

Defendant Dale Hiller paid close attention to these developments. A decorated combat veteran and former first responder with the Los Angeles Fire Department, Mr.

---

[1] Tara Law, *'It's Obvious There's a Cultural Rot': Activists Collect Hundreds of Examples of Alleged Police Misconduct in One Public Spreadsheet*, TIME (June 7, 2020, 6:26 PM), https://time.com/5849839/police-brutality-george-floyd-protests-spreadsheet/.

Hiller became concerned with police misconduct in 2019, after witnessing a friend's life put in danger by the actions of police. Since that time, Mr. Hiller has devoted his YouTube channel, previously a forum for gaming-related videos, to discussing and exposing police misconduct that poses a danger to citizens' health, safety, and constitutional rights.

On June 4, 2020, in the midst of significant ongoing protests against police and violence against minorities, a Chicago Police Department officer wearing a name tag reading "Goetz," was filmed in a van with other officers extending both middle fingers to protesters, allegedly in response to a protester's similar gesture towards the van.[2] As the video spread and was reported on in the media that day, the Chicago Police Department opened an investigation into the incident.[3] Chicago Mayor Lori Lightfoot called on the department to fire the officer, and on June 9, the Chicago Police Department confirmed that the officer involved had been stripped of his police powers but did not release the officer's name.[4]

After reading about the incident on social media and in news reports—his typical sources for videos that he makes—Mr. Hiller decided that it fit his interest in discussing police misconduct towards citizens and set out to create a video for his YouTube channel. While researching for his video, he discovered the Chicago Police Data Project (CPDP) website,[5] which aggregates data from the police complaint records released pursuant to a court order. Erroneously believing that the CPDP website was operated by the Chicago

---

[2] Colin Boyle, *Chicago Cop Who Flipped Off Protesters Stripped Of Police Powers*, Block Club Chicago (June 9, 2020, 1:55 PM), https://blockclubchicago.org/2020/06/09/chicago-cop-who-flipped-off-protesters-stripped-of-police-powers/.
[3] *Id.*
[4] *Id.*
[5] http://cpdp.co

Police Department,[6] Mr. Hiller decided to include a second segment in the video with commentary about the website and its relation to police transparency, since he was already going to be discussing the incident involving the Chicago Police Department.

On June 6, 2020, Mr. Hiller published his video, titled "What Cops REALLY Think Of You." In the video, Mr. Hiller spends approximately four minutes discussing the June 4 incident, displaying pictures and videos of the incident, and reading from news reports. Following this discussion, Mr. Hiller inserted a commercial break at the 4:02 mark, and then continued to a second segment in which he discussed police transparency and the CPDP database.

In order to show viewers what kind of data the CPDP website does and does not contain, Mr. Hiller displayed the CPDP page for Plaintiff Ignatius Goetz and reviewed all of the information contained therein, including Plaintiff's commendations and complaints filed against him. At no time during his discussion of the CPDP website did Mr. Hiller connect Plaintiff to the previous segment regarding the June 4 incident, nor did he state, hint, or imply that Plaintiff was the individual depicted in the images and videos of that incident; Mr. Hiller's discussion related to Plaintiff was limited to the topic of the CPDP website and police transparency.

Nevertheless, Plaintiff brought suit in the Circuit Court of Cook County alleging that Mr. Hiller defamed him and placed him in a false light by discussing him in the video. According to Plaintiff, by "referring to [him] within the video and by reviewing Mr. Goetz's CPDP profile, Defendant . . . has implicated Plaintiff as the white, male Chicago Police

---

[6] CPDP is in fact a project of the Invisible Institute, a non-profit organization headquartered in Chicago.

Officer using profane gestures to the group of protesters," and that Plaintiff is in fact *not* the individual from the June 4 incident. Compl. ¶¶ 10–11.

Plaintiff's complaint is replete with conclusory assertions and thin on facts that would render his claims plausible. The complaint fails to state a claim upon which relief can be granted for several reasons, discussed in turn below:

First, because Mr. Hiller did not state that Plaintiff was the Chicago Police officer who made the profane gesture towards protesters, and because it would be reasonable to construe the article in a way that does not insinuate that he is that individual, Plaintiff cannot maintain a cause of action for defamation *per se*.

Second, even if Plaintiff's complaint can be read as alleging a cause of action for defamation *per quod*, Plaintiff has alleged only damages that are either non-pecuniary in nature or vague and nonspecific, and therefore has not adequately pled special damages pursuant to Federal Rule of Civil Procedure 9(g).

Third, as a public official Plaintiff must plead that Mr. Hiller acted with actual malice, as well as supporting facts sufficient to render the allegation plausible under federal pleading standards. Because Plaintiff's cause of action for defamation contains only a bare, conclusory recitation of the element of actual malice, it must be dismissed.

Finally, Plaintiff's cause of action for false light must be dismissed because (1) the complaint does not sufficiently plead actual malice, a crucial element of false light invasion of privacy, (2) where a false light claim is based upon a failed claim for defamation *per se*, the false light challenge must fail as well, and (3) Plaintiff has failed to adequately plead special damages.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for this misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must treat all *well-pleaded* facts in the complaint as true, but mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient to state a cause of action. *Twombly*, 550 U.S. at 555. *See also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("[I]n considering the plaintiffs [sic] factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."). Rather, the plaintiff must "present a story that holds together" and would, if the facts were proven as alleged, satisfy each element of his claim. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). A court sitting in diversity jurisdiction applies the substantive law of the forum state, and federal procedural law. *Lott v. Levin*, 469 F. Supp. 2d 575, 579 (N.D. Ill. 2007).

I.     **PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION**

Under Illinois law a statement is defamatory if "it tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person." *Tuite v. Corbitt*, 224 Ill. 2d 490, 866 (2006). To state a claim for defamation, "a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication

of that statement to a third party, and that this publication caused damages." *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 579 (Ill. 2006).

Illinois categorizes defamation as either *per se* or *per quod*. Defamation *per se* involves "words so obviously and naturally hurtful to the aggrieved person that proof of their injurious character is unnecessary." *Cantrell v. American Broadcasting Cos.*, 529 F. Supp. 746, 752 (N.D. Ill. 1981). To constitute defamation *per se*, a statement must fall within five specific categories:

> (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

*Lott v. Levitt*, 469 F. Supp. 2d 575, 579 (N.D. Ill. 2007) (citing *Solaia Tech.*, 221 Ill. 2d 558). The difference between the third and fourth categories is that "[t]he former seems to imply some sort of on-the-job malfeasance; the latter covers suitability for a trade or profession." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 613 (7th Cir. 2013).

Defamation *per quod*, on the other hand, exists "where extrinsic facts or innuendo render defamatory a publication not libelous on its face, and the defamation causes special damages." *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 89 C 2470, 1990 U.S. Dist. LEXIS 15949 at *7 (N.D. Ill. Nov. 14, 1990) (citing *Pruitt v. Chow*, 742 F.2d 1104, 1008 (7th Cir. 1984)).

### A. PLAINTIFF'S DEFAMATION *PER SE* CLAIM IS BARRED BY THE RULE OF INNOCENT CONSTRUCTION

As a threshold matter, at no point in the video in question does Mr. Hiller state or imply that Ignatius Goetz is the Chicago Police Officer seen extending his middle fingers to

protesters. For that reason alone, Plaintiff's defamation claim should fail, as Mr. Hiller did not make a statement of fact of or concerning Plaintiff.

But even if Mr. Hiller's video could be construed as raising a defamatory implication, it is not actionable as defamation *per se* because it is also reasonably capable of a non-defamatory construction. In Illinois, an allegedly defamatory statement is not actionable *per se* if it is "reasonably capable of an innocent construction." *Solaia*, 221 Ill. 2d at 580. The rule of innocent construction applies "to the meaning of the words . . . [and] to the identification of the object of the speech, or the question of colloquium, and to the determination of whether the statement is a statement of fact." *Spelson v. CBS, Inc.*, 581 F. Supp. 1195, 1200–01 (N.D. Ill. 1984).

In assessing whether a statement is reasonably capable of an innocent construction, courts "consider the statement in context and give the words of the statement, and any implications arising from them, their natural and obvious meaning." *Solaia*, 221 Ill. 2d at 580. While a court should not strain to find a nondefamatory interpretation of a statement, "there is no balancing of reasonable constructions." *Id.* (quoting *Mittelman v. Witous*, 135 Ill. 2d 220, 232 (1989). In other words, "*any* reasonable, innocent interpretation sounds the death knell to a per se defamation claim." *Lott*, 556 F.3d at 569. The innocent construction rule is intended to favor defendants because of the presumption of damages in defamation *per se* cases. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 413 (1996). Whether a statement can be reasonably be given an innocent construction is a question of law. *Nast v. Connecticut General Life Ins. Co.*, 632 F. Supp. 1024, 1026 (N.D. Ill. 1986).

Plaintiff appears to implicitly acknowledge that Mr. Hiller's video can reasonably be construed in a non-defamatory way when he pleads an extrinsic interpretation in order to

give Mr. Hiller's words a defamatory gloss not apparent on their face. Plaintiff's complaint states:

> Contained within the video, Defendant, DALE HILLER, points to the Chicago Police Officer and states "And then you have Goetz **[referring to Police Sergeant Ignatius Goetz]** at the back flipping off the protesters."

Compl. ¶ 8 (emphasis added).

In this paragraph, Plaintiff refers to Mr. Hiller's statement approximately two minutes and fifteen seconds into his video. But the name Ignatius Goetz had not been mentioned or displayed when Mr. Hiller made this statement, nor had Plaintiff's identity been alluded to or discussed in any way. Instead, Mr. Hiller was plainly and obviously referring to the officer depicted in the photos and video making the profane gesture towards protesters, who bore a name tag reading "Goetz." Indeed, beginning at approximately three minutes and thirty-four seconds into his video, Mr. Hiller explicitly states that he is referring to the visible name tag of the pictured officer.

Only *after* his discussion of the gesturing incident, in the second segment of the video unrelated to that incident, does Plaintiff's name appear for the first time. At approximately four minutes into his video, Mr. Hiller inserted a commercial break and then segued into a separate and distinct discussion about police transparency and an online database that provides public information on Chicago Police Department officers, stating:

> Now before I let you go to ponder the heavy burden of knowing how the law enforcement agencies that rule over us feel about us, the citizens, I'll show you something a little deeper; something that I thought is almost outstanding.

Mr. Hiller then introduces the CPDP website, which catalogues information regarding police misconduct within the Chicago Police Department obtained via the court-ordered release of civilian complaints.

In this segment of his video, Mr. Hiller displays the CPDP page for Ignatius Goetz, listed with the rank of "Police Officer," and guides viewers through the various data that the website offers. Mr. Hiller also expresses frustration at the reluctance of police officers to file misconduct complaints against their colleagues, the lack of disciplinary action against police officers, and the lack of detailed information available regarding complaints on the CPDP website. But at no time during the second segment of his video does Mr. Hiller refer to, or hint towards, the gesturing incident discussed in the first segment. Rather, the second segment focused entirely on the merits of the CPDP as a transparency tool and was tied to the first section only by the fact that both related to the Chicago Police Department.

This Court's application of the rule of innocent construction in *Wilson v. Arts & Entertainment Network*, 1998 U.S. Dist. LEXIS 14747 (N.D. Ill. Sept. 25, 1998), is instructive. In *Wilson*, former Oak Park police officer Jim Wilson filed a lawsuit against A&E Television Networks (A&E) alleging defamation and false light invasion of privacy stemming from an interview he gave for a documentary about mobster Sam Giancana. *Id*. The segment of the documentary containing Wilson's interview was introduced by a narrator stating, "Those who enforced the law were the cheapest to buy." *Id.* at *2. The documentary then aired part of Wilson's interview, identifying him with his name and as a "former police officer" in text on the screen, in which he said:

> Wilson: Once you took the money you became one of them, and then if you decided not to take the money, it was the fear of what you had done and what they could do to you that would entice you to play ball with them.
> Interviewer: And what could they do to you?
> Wilson: They could kill you.

*Id.* at *2–3.

Holding that the rule of innocent construction barred Wilson's defamation *per se* claim, the court reasoned that although the juxtaposition of the narration and interview "may permit" an inference that Wilson was a corrupt police officer, the video "does not explicitly claim that Wilson was corrupt." *Id.* at *11.

Here, the gap between the actual words spoken and the alleged defamatory inference is even greater than in *Wilson*. Mr. Hiller did not display Plaintiff's name or CPDP page while discussing the officer who made the offensive gesture. The only reference made to plaintiff was in the second segment of the video, which occurred after a commercial break and was unrelated to the gesturing incident (and made no mention of it at all). Plaintiff may believe that Mr. Hiller was referring to him when he used the name "Goetz," but he is not entitled to place words into Mr. Hiller's mouth to create a claim for defamation *per se*, nor is his interpretation entitled to deference. *See Ludlow v. Northwestern Univ.*, 79 F. Supp. 3d 824, 838 (N.D. Ill. 2015) ("While the Court must take all well-pleaded allegations in a complaint as true for the purposes of determining a motion to dismiss, the Court need not take the plaintiff's *interpretation* of the allegedly defamatory words at face value.") (internal quotation marks and citation omitted).

Because Mr. Hiller's video did not state or imply that Plaintiff was the officer seen gesturing at protesters, and can be reasonably construed in a non-defamatory manner, Plaintiff's defamation *per se* claim fails as a matter of law.

### B. PLAINTIFF'S ALLEGATION THAT MR. HILLER ACCUSED HIM OF COMMITTING A CRIME IS UNSUPPORTED AND WITHOUT MERIT

Plaintiff appears to also allege defamation *per se* on the grounds that Mr. Hiller published "an implication that Plaintiff is guilty of serious and reprehensible criminal conduct." Compl. ¶ 20. But in order to state a claim for defamation *per se* based on imputation of

criminal conduct, a statement must charge the plaintiff with commission of an indictable offense that involves moral turpitude and is punishable by death or imprisonment. *Weber v. Village of Hanover Park*, 768 F. Supp. 630, 638 (N.D. Ill. 1991). At no time did Mr. Hiller ever state or imply that Plaintiff had engaged in any criminal activity, let alone the type of serious criminal conduct that gives rise to a claim of defamation *per se*. And Plaintiff has not alleged any facts, plausible or otherwise, that would tend show Mr. Hiller has in fact made any such publication. Accordingly, to the extent Plaintiff's defamation *per se* claim rest upon a statement that imputes criminal conduct, it fails to state a claim and must be dismissed.

## C. PLAINTIFF ALSO FAILS TO STATE A CLAIM FOR DEFAMATION *PER QUOD*

Even if Plaintiff's complaint is charitably interpreted as pleading a claim for defamation *per quod*, it must be dismissed because Plaintiff does not adequately plead special damages. To state a claim for defamation *per quod*, a plaintiff must plead special damages with particularity. *Cody v. Harris*, No. 03-CV-934, 2004 U.S. Dist. LEXIS 6934 at *16 (N.D. Ill. Jan. 21, 2004). "Although an estimation of final total dollar amounts lost is unnecessary, the pleadings must demonstrate some actual pecuniary loss." *Action Repair, Inc. v. American Broadcasting Cos.*, 776 F.2d 143, 149–50 (7th Cir. 1985) (internal citations omitted).

In his complaint, Plaintiff alleges damage to his "personal and professional reputation," and "emotional distress, humiliation, embarrassment, and "mental suffering." Compl. ¶ 21. Such allegations do not demonstrate any pecuniary loss and are "clearly not sufficient to state a claim for special damages." *Cody*, 2004 U.S. Dist. LEXIS at *17. *Accord Brown and Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262 (7th Cir. 1983) (pleading general reputational harm is insufficient to satisfy special damages pleading requirements).

The only other damages plaintiff alleges are "damages, including, but not limited to lost income and opportunities, as well as damage to his future earning capacity." Plaintiff does not point to any specific opportunities or income lost, nor does he explain in what way his future earning capacity has been diminished. Such vague and conclusory allegations do not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(g).

Moreover, "the pleader must do more than allege that the injury suffered was the natural result of the alleged libel. At the very least, the allegation must be explicit." *Spelson v. CBS, Inc.*, 581 F. Supp. 1195, 1201 (N.D. Ill. 1984) (internal quotation marks omitted). A plaintiff's failure to allege *how* a defamatory statement caused specific injuries is fatal to a claim of defamation *per quod*. *See id.* at 1206 ("The complaint wholly fails to allege which statements caused what damage, how such statements damaged plaintiff, [and] the exact amounts of alleged damages . . . ."). Because Plaintiff has alleged only vague or non-pecuniary damages, and has failed to allege the causal link of any damages, he also fails to state a claim of defamation *per quod*.

### D. PLAINTIFF FAILS TO ADEQUATELY PLEAD ACTUAL MALICE

In *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the Supreme Court proclaimed our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open" and cautioned that "erroneous [statements are] inevitable in free debate, and . . . must be protected if the freedoms of expression are to have the breathing space that they need . . . to survive." *Id.* at 270–72. To protect that breathing space, the Court held that public officials cannot sustain a libel action unless they plead and prove by clear and convincing evidence that the defendant acted with "actual malice," defined as "knowledge that [the statement] was false or with reckless disregard of

whether it was false or not." *Id.* at 279–80. Further expounding on these principles in a subsequent case, the Court stated:

> Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized. It is clear, therefore, that the "public official" designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.

*Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).

Following the Court's reasoning in *Sullivan* and *Rosenblatt*, the Supreme Court of Illinois has repeatedly affirmed that a police officer of even the lowest rank is a "public official" who must prove actual malice to recover for defamation:

> Although as a patrolman he is 'the lowest in rank of police officials' . . . his duties are peculiarly 'governmental' in character and highly charged with the public interest . . . The abuse of a patrolman's office can have great potentiality for social harm; hence, public discussion and public criticism directed towards the performance of that office cannot constitutionally be inhibited by threat of prosecution under State libel laws.

*Reed v. Northwestern Pub. Co.*, 124 Ill. 2d 495, 507 (1988) (quoting *Coursey v. Greater Niles Township Publishing Corp.*, 40 Ill. 2d 257, 265 (1968)). As a sergeant in the Chicago Police Department, Plaintiff is indisputably a public official and must plead and prove that Mr. Hiller published a false statement of fact with actual malice. *Madison v. Frazier*, 539 F.3d 646, 657 (7th Cir. 2008).

To satisfy the actual malice standard, Plaintiff must show subjectively that Mr. Hiller actually had a "high degree of awareness of . . . probable falsity." *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657, 688 (1989) (quoting *Garrison v. Louisiana*, 379

U.S. 64, 74 (1964)). This bar is so high that "[f]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard." *Id*. (citing *St. Amant v. Thompson*, 390 U.S. 727, 731, 733 (1968)). While Federal Rule of Civil Procedure 9(b) permits states of mind to be pled generally, alleging actual malice without plausible supporting factual allegations is precisely the bare recitation of elements that federal pleading standards prohibit and will not withstand a motion to dismiss. *See Pippen v. NBC Universal Media, LLC*, No. 11-CV8834, 2012 U.S. Dist. LEXIS 195436 at *2 (N.D. Ill. Aug. 2, 2012), *aff'd sub nom. Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610 (7th Cir. 2013).

In this case, Plaintiff pleads only a bare conclusory assertion: "The statements published by Defendant, DALE HILLER, were published with knowledge that the statements were false and/or published with a reckless disregard for the truth." Compl. ¶ 15. Plaintiff offers no facts whatsoever to support his allegation of actual malice, and therefore his complaint fails to state a cause of action for defamation.

## II. PLAINTIFF'S FALSE LIGHT CLAIM FAILS FOR THE SAME REASONS AS HIS DEFAMATION CLAIM

Plaintiff's cause of action for false light invasion of privacy must be dismissed for the same reasons as his defamation claim.

A plaintiff may not evade the pleading restrictions of defamation by bringing a cause of action for false light invasion of privacy. Where a false light claim is based on an unsuccessful defamation *per se* claim, the false light claim also fails. *See Madison v. Frazier*, 539 F.3d 646, 659 (7th Cir. 2008). But even if Plaintiff's complaint is read as attempting to allege defamation *per quod*, his false light claim still fails. Where a false light claim is based

on a statement that is not defamatory *per se*, a plaintiff must allege special damages with particularity, as he would in a cause of action for defamation *per quod*. *Maremont v. Susan Fredman Design Group, Ltd.*, 772 F. Supp. 2d 967, 973 (N.D. Ill. 2011). As discussed above, Plaintiff has failed to satisfy the pleading standards for special damages, and therefore his false light invasion of privacy claim fails as a matter of law.

Furthermore, actual malice is an element of all actions for false light invasion of privacy. *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 17–18 (1992). Because, as previously discussed, Plaintiff failed to plead any facts with respect to actual malice, his false light claim must similarly be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Dale Hiller respectfully requests that the Court dismiss Plaintiff's complaint.

Dated: September 9, 2020

Respectfully Submitted,

By: /s/ Ari Z. Cohn

Ari Z. Cohn (#6303077)
5315 N. Clark St., Suite 152
Chicago, Illinois 60640
Telephone: (312) 262 – 2090
Email: attorney@aricohn.com
**Attorney for Dale Hiller**