**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| IGNATIUS GOETZ, ) | |
| ) | |
| Plaintiff, ) | Case No.: 1:20-cv-05167 |
| ) | |
| -vs- ) | The Honorable Judge Mary M. Rowland |
| ) | |
| DALE HILLER, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF, IGNATIUS GOETZ'S RESPONSE IN OPPOSITION TO DEFENDANT, DALE HILLER'S MOTION TO DISMISS**

NOW COMES the Plaintiff, IGNATIUS GOETZ, by and through his attorneys, MDR LAW LLC, and in opposition to Defendant, DALE HILLER's Motion to Dismiss Pursuant Federal Rules of Civil Procedure Rule 12(b)(6) submits the following Response in Opposition and states as follows:

**INTRODUCTION**

The tragic death of George Floyd synthesized a politically charged atmosphere in the greater Chicaoland area. As civil unrest grew, protestors, a majority of which were peaceful, demonstrated throughout the city for several weeks. As a result, the Chicago Police Department employed a multitude of Officer's to ensure the safety of the protestors and the general public.

On June 4, 2020, during the height of the aforementioned protests, a video recording captured a Chicago Police Officer riding in a van, brandishing the name tag "Goetz", and making profane gestures toward protestors. However, the Police Officer had a majority of his/her face covered by his/her mouth, thus making the identity of the Officer impossible to accurately identify.

On June 6, 2020, the Defendant, Dale Hiller, uploaded a YouTube video entitled "What Cops REALLY Think Of You." Contained therein, the Defendant shared the video of the Police

Officer making profane gestures toward the protestors and voiced his displeasure with this type of behavior. Immediately after, the Defendant reviewed the Plaintiff, Ignatius Goetz's CPDP (Citizens Police Data Project) profile, attempting to shed light on police accountability and transparency. By doing so, the Defendant directly implicated the Plaintiff, Ignatius Goetz as the Police Officer brandishing the name tag "Goetz" and making profane gestures toward the protestors. At no time did the Defendant review any other Police Officer's CPDP profile or provide information on any other Chicago Police Officer other than Ignatius Goetz. More importantly, at no point in the video is there a commercial break. When confronted with a request to remove the video, Defendant admitted he didn't know which officer was contained in the video making profane gestures toward the protestors. Per the correspondence, Defndenat stated "I do not know which officer Goetz is shown in the video flipping off the citizens…"

## PROCEDURAL HISTORY

Plaintiff, Ignatius Goetz, filed his Complaint at Law on July 27, 2020, sounding in allegations of defamation and false light privacy against the Defendant, Dale Hiller, surrounding the aforementioned YouTube video. On September 2, 2020, Defendant filed a Notice of Removal removing the instant case from the Circuit Court of Cook County to the United States District Court for the Northern District of Illinois, Eastern Division. Defendant filed his Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6) and an accompanying Memorandum in Support on September 9, 2020. To date, Defendant has not answered Plaintiff's Complaint. For the reasons set forth below, Plaintiff's Complaint at Law has sufficiently stated a claim upon which relief can be granted, therefore this Honorable Court must deny Defendant's Motion to Dismiss and allow this matter to proceed to discovery. In the alternative, if Plaintiff's Complaint is

dismissed without prejudice, Plaintiff requests that this Honorable Court grant Plaintiff leave to file his First Amended Complaint at Law.

## ARGUMENT

The purpose of a Motion to Dismiss filed pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) is "to test the sufficiency of a complaint, not to decide the merits of the case." *Wilson v. Arts & Entertainment Network*, 1998 U.S. Dist. LEXIS 15747 (N.D. Ill. Sept. 25, 1998) at *4. Pursuant to *Doherty v. City of Chicago*, "the court assumes the allegations of the complaint a[s] true and construes them in the light most favorable to the plaintiff," 75 F.3d 318, 322 (7th Cir. 1996). Unless it appears beyond a doubt that plaintiff "can prove no set of facts in support of his claim which would entitle him to relief," a complaint should not be dismissed. *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L.Ed. 2d 80, 78 S.Ct. 99 (1957). Procedurally, a court sitting in diversity jurisdiction applies the substantive law of the forum state, and federal procedure law. *Lott v. Levin*, 469 F.Supp.2d 575, 579 (N.D.Ill 2007).

In Illinois, the definition of defamation is governed by, *inter alia, Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009). "Defamation is the publication of false statements that 'tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters other from associating with that person.'" *Ibid*; citing *Tuite v. Corbitt*, 224 Ill.2d 490, 310 Ill.Dec. 303, 866 N.E.2d 114, 121 (2006). To prevail on a claim for defamation, a plaintiff must prove "that the defendant made a false statement concerning the plaintiff and there was an unprivileged publication to a third party with fault by the defendant, which caused damage to the plaintiff." *Wilson*, 1998 U.S. Dist. LEXIS at *5; citing *Krasinski v. United Parcel Service*, 124 Ill.2d 483, 530 N.E.2d 468, 471, 125 Ill. Dec. 310 (Ill. 1988).

In Illinois, there are two categories of defamation: *per se* defamation and *per quod* defamation. A statement is defamatory *per se* if its "defamatory character is obvious and apparent on its face and injury to the plaintiff's reputation may be presumed." *Owen v. Carr*, 11 Ill.2d 273, 277, 497 N.E.2d 1145, 100 Ill. Dec. 783 (1986). There are five categories of statements that are defamatory per se:

> (1) statements imputing the commission of a crime; (2) statements imputing infection with a loathsome communicable diseases; (3) statements imputing an inability to perform or want of integrity in performing employment duties; (4) statements imputing a lack of ability or that otherwise prejudice a person in his or her profession or business; and (5) statements imputing adultery or fornication.

*Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579, 852 N.E.2d 825, 304 Ill. Dec. 369 (2006); *citing Van Horne v. Muller*, 185 Ill.2d 299, 307, 705 N.E.2d 898, 235 Ill. Dec. 715 (1998). For defamation *per quod*, "damage to the plaintiff's reputation is not presumed. Rather, the plaintiff must plead and prove special damages to recover." *Bryson v. New America Publication, Inc.*, 174 Ill.2d 77, 103, 672 N.E.2d 1207, 220 Ill. Dec. 783 (1986); *see also* Fed. R. Civ. Pro. Rule 9(g) ("If an item of special damage is claimed, it must be specifically stated"). Plaintiff's Complaint at Law only pled defamation *per se*.

Notwithstanding a statement's placement in one of the five aforementioned categories, it may not be actionable *per se* if it is reasonably capable of an innocent construction. *Bryson*, 174 Ill.2d at 90. The meaning of a statement is a question of law, and "[t]o discern the meaning [of a statement], courts must draw from the context of the statement and give the words their natural and obvious meaning." *Ibid.* (internal quotations omitted).

## I. PLAINTIFF'S DEFAMATION *PER SE* CLAIM IS NOT BARRED BY THE RULE OF INNOCENT CONSTRUCTION

Pursuant to *Lott*, "a statement that is reasonably capable of an innocent construction is not *per se* defamatory," 566 F.3d at 568. Therefore, under a successful innocent construction determination, a court can dismiss a complaint for failure to state a claim upon which relief can be granted. Whether a statement can reasonably be given an innocent construction is a question of law. *Nest v. Connecticut General Life Insurance Co.*, 632 F.Supp. 1024, 1026 (N.D. IL 1986). The case at bar, however, is not a circumstance in which the rule of innocent construction is applicable.

### A. Defendant's YouTube Video Does Not Contain a Commercial Break

As an initial, and certainly integral, matter, Plaintiff does not, as Defendant contends, "appear to implicitly acknowledge that Mr. Hiller's video can reasonably be construed in a non-defamatory way…" Def. Mem., at 7. Said tacit acknowledgement would undermine the gravamen of Plaintiff's complaint (effectively rendering him without redressability) and would leave Plaintiff's counsel susceptible to a legal malpractice claim. As discussed *infra*, Defendant's statements can only be reasonably construed as a professional attack on the Plaintiff.

Secondly, and potentially even more important, Defendant's YouTube video "What Cops REALLY Think Of You" does not contain a commercial break. (Plaintiff has attached a downloaded version of the YouTube video as Exhibit "A"). Unfortunately for the Defendant, this undermines the entire foundation of his argument. Within his Memorandum in Support, Defendant continuously refers to the video as being two separate and distinct segments – utilizing the non-existing commercial break as justification. *See* Def. Mem., at 8 ("At approximately four minutes into his video, Mr. Hiller inserted a commercial break and then segued into a separate and distinct discussion about police transparency"). However, as clearly shown, the video does not contain a commercial break, and therefore the only reasonable interpretation is to view the piece as one

continuous video. Consequently, the video of the Chicago Police Officer, identified only by his name tag "Goetz", making profane gestures to the protestors, and the subsequent review and criticism of Ignatius Goetz's CPDP profile are inexorably interwoven. Thus, Defendant is not entitled to the benefit of claiming two separate and distinct portions of the video, and must analyze the video, without the commercial break, as one continuous video and accept any legal ramifications flowing therefrom.

Defendant's review of Plaintiff's CPDP page could be construed as a generalized attack on the city of Chicago Police Officers if it was uploaded as a separate and distinct video, thus rendering the video susceptible to the rule of innocent construction. However, the legal analysis changes when it was uploaded in conjunction with the unidentified Police Officer making obscene gestures toward the protestors. The video transitions into a personalized, professional attack on Plaintiff when the Defendant juxtaposes the review and criticism of Ignatius Goetz's CPDP profile with the aforementioned discussion of the Police Officer making profane gestures to the protestors (brandishing the name tag "Goetz"). Therefore, the video can only be reasonably construed as defamation lobbied against the misidentified Plaintiff. To hold otherwise would afford the Defendant the opportunity to misidentify the Plaintiff as the Police Officer making profane gestures toward the protestors, subsequently review Ignatius Goetz's CPDP profile while lobbying criticism against the Chicago Policer Department and police transparency in general, and then be insulated from any liability under a completely erroneous theory of two separate and distinct videos, re gardless of any commercial break. This goes too far.

Defendant had a myriad of Chicago Police Officer's CPDP profiles to review[1], and reviewing any other Officer's profile not bearing the last name "Goetz" would still have achieved the same objective of shedding light on police transparency (or the lack thereof). Curious that out of approximately 12,000 Chicago Police Officers, Defendant specifically chose Plaintiff, Ignatius Goetz's CPDP profile to review. Therefore, by commenting on the Chicago Police Officer (bearing the name tag "Goetz") making profane gestures toward protestors, and subsequently reviewing and criticizing Ignatius Goetz's CPDP profile, without explicitly stating that the Plaintiff was not the Officer making the profane gestures, Defendant reasonably implicates Police Officer Ignatius Goetz as the Officer making profane gestures toward the protestors. Therefore, this Court must reject Defendant's contention that Plaintiff's Complaint at Law is barred by the rule of innocent construction.

### B. *Wilson v. Arts & Entertainment Network* Weighs in Favor of Denying Defendant's Motion to Dismiss

Defendant relies on a case analysis of *Wilson v. Arts & Entertainment Network* for an instructive insight into the rule of innocent construction, 1998 U.S. Dist. LEXIS 15747 (N.D. Ill. Sept. 25, 1998). Notwithstanding a successful recitation of the pertinent facts, Defendant's legal analysis is severely deficient. The Court in *Wilson* relies heavily on *Saenz v. Playboy Enterprises, Inc.*, holding that when the Plaintiff is a public official, he must show "an explicit charge specifically directed at him" and the Plaintiff must "show the attachment to him with convincing clarity," 653 F. Supp. 552 (N.D. Ill. 1987). However, on appeal, the Seventh Circuit specifically rejected the district court's approach. *Saenz v. Playboy Enterprises, Inc.*, 84 F.2d 1304, 1314 (7th

---

[1] According to recent statistics, the Chicago, Illinois Police Department currently employs 11,954 Police Officers. *Police Employment, Officers Per Capita Rates for U.S. Cities*, GOVERNING, July 2, 2018, https://www.governing.com/gov-data/safety-justice/police-officers-per-capita-rates-employment-for-city-departments.html.

Cir. 1988). The Seventh Circuit in *Saenz* opined a reproachful stance on a heightened pleading requirement:

> A requirement that allegedly defamatory statements specifically and explicitly libel the plaintiff denies a public official the opportunity to demonstrate defamatory inferences that are as clear and perhaps more damaging because of their unlimited nature than even explicitly defamatory charges. Indeed, a public official soiled by the stain of defamatory innuendo is disadvantaged greatly in responding to the varying inferences that may be gleaned from inexact accusations. Such a rule goes too far; it invokes the specter of heinous abuse by crafty and mischievous authors whose subtle art of insinuation is honed for destruction.

*Ibid.* Moreover, the *Saenz* Court read the two precedential defamation cases articulating the heightened pleading standard more narrowly, claiming that an impersonal criticism of a government entity cannot establish defamation on the members of the entity. *Id.* at 1315.

The *Wilson* Court stated that "juxtaposing [a] voice-over about corruption with the interview of the [plaintiff]," thus arguably encouraging the inference that plaintiff was corrupt, could be "the type of insinuation that the Seventh Circuit suggested could be actionable," 1998 U.S. Dist. LEXIS 15747 at *6. Defendant claims that the juxtaposition gap in the case at bar is greater than in *Wilson*. This is patently false. Defendant erroneously contends "[t]he only reference made to Plaintiff was in the second segment of the video, which occurred after a commercial break and was unrelated to the gesturing incident…" Def. Mem., at 10. However, as discussed *supra*, Defendant's video does not contain a commercial break and must be analyzed as one continuous video. Moreover, how can Defendant possibly claim that discussing Ignatius Goetz's CPDP profile seconds after showing an unidentified Chicago Police Officer, brandishing the name tag "Goetz" making profane gestures to protestors be unrelated? The entire foundation of Defendant's argument is based on an erroneous contention (i.e. there is a commercial break) and thus crumbles under legal scrutiny.

Incidentally, the Court in *Wilson* articulated dictum that directly weighs in favor of Plaintiff's argument. "The voice-over stating that 'those who enforced the law were the cheapest to buy' does not explicitly claim that [plaintiff] was corrupt. The juxtaposition may permit such an inference, but it is reasonable to believe that the narrator is indicating that law enforcement officials other than [plaintiff] were corrupt." *Wilson*, 1998 U.S. Dist. LEXIS 15747 at *10. The case at bar is materially distinguishable. By immediately reviewing Ignatius Goetz's CPDP profile after showing the unidentified Chicago Police Officer brandishing the name tag "Goetz" making profane gestures to protestors, without including any other Police Officer's name or information, a viewer's only reasonable conclusion is that Mr. Hiller is implicating Ignatius Goetz' as the unidentified Police Officer. At no point in the YouTube video did Defendant point to any other Police Officer as the unidentified Officer making the profane gestures, nor review any other Officer's CPDP profile other than Ignatius Goetz. Any reasonable viewer of the video would infer that Mr. Hiller was implicating Plaintiff as the unidentified officer brandishing a Goetz nametag. Therefore, under a proper analysis of *Wilson*, this Court must deny Defendant's Motion to Dismiss.

### C. Plaintiff's Compliant at Law Adequately Pled Actual Malice

Plaintiff does not contest that as a sergeant in the Chicago Police Department, he is categorized as a public official. Further, Plaintiff does not contest that where the potentially-defamed individual is a public official, a plaintiff must prove that the allegedly defamatory statements were made with actual malice. However, Plaintiff contests that his Complaint at Law inadequately pled actual malice.

As an intial matter, Mr. Hiller admitted he did not know which officer is shown making profane gestures toward the protestors. Per the correspondence, Defendant stated "I do not know which officer Goetz is shown in the video flipping off the citizens…" This admission alone should

serve as the foundational basis to satisfy the actual malice requirement in order to prove defamation *per se*. Even if this admission doesn not prove actual malice, pursuant to an anlysis under precedneital Illinois caselaw, Defendant's video was published with actual malice.

Pursuant to *Hardiman v. Aslam* "where the offending statement is made by a member of the press or a media organization about a public figure…first amendment protections require that the plaintiff may not obtain redress in a libel action unless he proves that the allegedly defamatory statements were made with actual malice," 125 N.E.3d 1185, 1189 (internal quotations omitted); *citing Costello v. Capital Cities Communications, Inc.*, 125 Ill. 2d 402, 418-419, 532 N.E.2d 790, 126 Ill. Dec. 919 (1988) *(citing New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964)). The inquiry as to whether a statement was made with actual malice is subjective. *Wanless v. Rothballer*, 115 Ill. 2d 158, 170, 503 N.E.2d 316, 104 Ill. Dec. 759 (1986) (*citing Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 511 n.30, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984)). To prove actual malice, a plaintiff must prove by a clear and convincing evidence that the defendant "published the defamatory statements with knowledge that the statements were false or with reckless disregard for their truth or falsity." *Hardiman*, 125 N.E.3d at 1189; *citing Costello*, 125 Ill. 2d at 419. A court may find a reckless disregard for the truth where "the evidence shows that the defendant in fact entertained serious doubts as to the truth of the publication." *Ibid*.

Presently, Defendant's statements were published with a reckless disregard for their truth, and thus satisfy the actual malice requirement. Specifically (under *Hardiman*), Defendant's investigation clearly revealed both insufficient information and creates a substantial doubt as to the truth of those accusations. The unidentified Police Officer making profane gestures toward the protestors had a significant portion of his/her face covered by his/her hands, therefore making it

almost impossible to accurately identify the Officer. In accordance with *Costello*, a "failure to investigate does not itself establish actual malice *if the defendants did not seriously doubt the truth of their accusation*," 125 Ill. 2d at 421 (emphasis added). Consequently, the question posed is not "Did Mr. Hiller investigate whether Ignatius Goetz was the Officer making profane gestures toward the protestors?" Rather, the correct question posed is "Did Mr. Hiller seriously doubt that Ignatius Goetz was the Police Officer making profane gestures toward the protestors?" If the answer is in the affirmative, then Defendant's statements were published with a reckless disregard for their truth and Plaintiff's Complaint adequately pleads actual malice. Presently, Defendant unequivocally had a serious doubt as to the proper identity of the Police Officer making profane gestures toward the protestors, as would any reasonable person. As evidenced by the video, the Police Officer had his/her face almost entirely covered while making profane gestures toward the protestors. At the pleading stage, this fact alone is enough to satisfy the actual malice requirement of a defamation claim.

Furthermore, how can Defendant, in good faith, claim the he had no serious doubt as to the identity of the Police Officer making profane gestures toward the protestors when the individual's face was almost completely covered? There is no reasonable evidence that Defendant could have used in order to determine the identity of the unidentified Police Officer, barring directly questioning the source. Although failure to investigate is no *per se* evidence of actual malice, without such direct evidence in the case at bar, the Defendant had to have a serious doubt as to the identity of the Officer brandishing the nametag "Goetz." An inconsistent holding would directly defy logic. For the foregoing reasons, this Court must determine that Plaintiff's Complaint at Law adequately pled actual malice and subsequently deny Defendant's Motion to Dismiss.

## II. PLAINTIFF'S FALSE LIGHT INVASION OF PRIVACY CLAIM IS ADEQUATELY PLED UNDER THE FORGOING ANALYSIS

As previously demonstrated, Plaintiff's defamation *per se* claim was adequately pled and this Court must deny Defendant's Motion to Dismiss. Moreover, Plaintiff's false light privacy claim is directly related to his defamation *per se* claim. To sustain a cause of action for false light invasion of privacy, the Plaintiff must allege: "(1) he was placed in a false light before the public as a result of the defendant's actions; (2) the false light would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice." *Chang Hyun Moon v. Kang Jun Liu*, 44 N.E.3d 1134, 1141 (Ill.App. 1 Dist. 2015); *see also Kurczaba v. Pollock*, 318 Ill.App.3d 686, 696, 252 Ill.Dec. 175, 742 N.E.2d 425 (2000); *see also Kirchner v. Greene*, 691 N.E.2d 107, 15-116 (Ill.App. 1 Dist. 1998). Moreover, if a false light invasion of privacy claim is based on statements that are not defamatory *per se*, a plaintiff must allege that he suffered special damages," *Chang Hyun Moon*, 44 N.E.3d at 1141; *see also Shaffer v. Zekman*, 196 Ill.App.3d 727, 736, 143 Ill.Dec. 916, 554 N.E.2d 988 (1990).

Presently, Plaintiff's Complaint at Law has adequately pled all three elements for a successful false light invasion of privacy claim. As an initial matter, Plaintiff's Complaint at Law only pled defamation *per se*, and therefore does not need to plead special damages under a false light invasion of privacy claim to overcome a motion to dismiss. In accordance with the first element, Defendant implied that Plaintiff, Ignatius Goetz, was the Chicago Police Officer brandishing the name tag "Goetz" and making profane gestures toward protestors, which is incorrect. This implication directly places the Plaintiff in a false light to the public. Plaintiff's Complaint at Law also satisfies the second element for a successful false light invasion of privacy claim. Pursuant to *Kolegas v. Heftel Broadcasting Corp.*, the second elements is met "when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the

community in feeling seriously offended and aggrieved by the publicity," 607 N.E.2d 201, 210 (Ill. 1922) (internal quotations omitted); *citing Lovgren v. Citizens First National Bank*, 126 Ill.2d 411, 128 Ill.Dec. 542, 534 N.E.2d 987 (1989). In order to successfully discharge the official duties as a Chicago Police Officer, an officer must gain the trust of the community. This trust is integral in maintaining peace and order in a community (especially one that is politically charged due to ongoing civil unrest) and any diminution thereof could result in the inability to successfully perform an officer's duties. Contained in his Complainant at Law, Plaintiff clearly pled that he was held in high regard, both personally and professionally, and had therefore maintained the trust of his community. Notwithstanding, this trust was significantly diminished when the Defendant implicated that Plaintiff was the Police Officer making profane gestures toward the protestors. Additionally, this false light (directly affecting Plaintiff's daily duties as a Police Sergeant) is clearly highly offensive to a reasonable person.

Finally, under the foregoing analysis, Plaintiff's Complaint at Law adequately pleads actual malice in his defamation *per se* claim and therefore has adequately pled actual malice in his false light invasion of privacy claim. Thus, Plaintiff's Complaint at Law has satisfied all three elements of a successful false light invasion of privacy claim. Consequently, this Court must deny Defendant's Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, Plaintiff, IGNATIUS GOETZ, respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss, or, in the alternative, grant the Plaintiff leave to file his First Amended Complaint at Law.

Respectfully Submitted,
**MDR LAW LLC**

By: /s/ *signature*
One of the Attorneys for the Plaintiff

Joseph J. Miroballi, Esq.
ARDC #: 3124783
Michael R. Riss, Esq.
ARDC #: 6333793
MDR LAW LLC
180 North LaSalle Street, Suite 3650
Chicago, Illinois 60601
Telephone: (312)-229-5555
Facsimile: (312)-229-5556
Service Email: joe@mdr-law.com
Service Email: michael@mdr-law.com

## **CERTIFICATE OF SERVICE**

I, Joseph Miroballi, an attorney, hereby certifies pursuant to Fed.R.Civ.P. 5 and L.R. 5.5, that a true and correct copy of the foregoing **Plaintiff, Ignatius Goetz's Response In Opposition To Defendant, Dale Hiller's Motion To Dismiss** was filed on October 7, 2020, with the clerk of the court using the CM/ECF system, which will send notification of such filings to all counsel of record.

                                                                 Respectfully Submitted,

                                                                 */s/Joseph J. Miroballi*
                                                                 Joseph J. Miroballi, Esq.

Attorney Firm No.: 41994
MDR LAW, LLC
180 N. LaSalle Street, Suite 3650
Chicago, Illinois 60601
(312) 229-5555 - Telephone
(312) 229-5556 – Facsimile